UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TERESA A. SEVIER,<br><br>　　　　Plaintiff,<br><br>　　v.<br><br>CAROLYN W. COLVIN,[1] Acting Commissioner of Social Security<br><br>　　　　Defendant. | 1:12-cv-01717 GSA<br><br>**ORDER REGARDING PLAINTIFF'S SOCIAL SECURITY COMPLAINT** |

**INTRODUCTION**

Plaintiff Teresa Sevier ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner" or "Defendant") denying her application for Supplemental Security Income payments under Title XVI of the Social Security Act.  The matter is pending before the Court on the parties' briefs, which were submitted, without oral argument, to the Honorable Gary S. Austin, United States Magistrate Judge.[2]

---

[1] Carolyn W. Colvin became the Acting Commissioner of Social Security on February 14, 2013.  Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Carolyn W. Colvin is substituted for Michael J. Astrue as the defendant in this action.

[2] The parties consented to the jurisdiction of a United States Magistrate Judge.  *See* Docs. 7 & 8.

1

## SUMMARY OF THE ADMINISTRATIVE PROCEEDINGS

On July 17, 2008, Plaintiff filed an application for supplemental security income benefits under Title XVI of the Social Security Act, alleging disability beginning May 15, 2007.[3] AR 121-124. The Disability Determination Services Division, California Department of Health and Human Services, denied her application initially on September 6, 2008, and upon reconsideration on December 11, 2008. AR 56-59; 64-68. Subsequently, on February 16, 2010, a Social Security Administration administrative law judge ("ALJ") conducted a hearing on Plaintiff's claim. AR 22-53. Plaintiff appeared with counsel and testified at the hearing. AR 22-53. In a decision dated April 9, 2010, the ALJ found that Plaintiff was not disabled. AR 10-17. On September 1, 2012, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the Commissioner's final decision. AR 1-3. Plaintiff then commenced this action in District Court pursuant to 42 U.S.C. §§ 405(g), 1383(c).

## STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), this Court reviews the Commissioner's decision to determine whether (1) it is supported by substantial evidence and (2) it applies the correct legal standards. *See Carmickle v. Commissioner*, 533 F.3d 1155, 1159 (9th Cir. 2008); *Hoopai v. Astrue*, 499 F.3d 1071, 1074 (9th Cir. 2007).

"Substantial evidence means more than a scintilla but less than a preponderance." *Thomas v. Barnhart*, 278 F.3d 947, 954 (9th Cir. 2002). It is "relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." *Id.* Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." *Id.*

---

[3] SSI benefits are payable from the month following the month in which an application establishing eligibility is filed. *See* 20 C.F.R. § 416.335.

**ISSUES PRESENTED FOR REVIEW**

Plaintiff raises two substantive issues in this appeal. First, Plaintiff argues that the ALJ improperly evaluated the treatment and diagnostic reports of a treating psychiatrist, Dr. Chua, regarding Plaintiff's mental impairments. Doc. 14, Pltff.'s Op. Br., 16-19. Next, Plaintiff argues that the ALJ failed to provide legally sufficient reasons for discounting Plaintiff's subjective symptom testimony. *Id.* at 19-22. Plaintiff contends that these errors in the ALJ's analysis were harmful to Plaintiff in terms of the ultimate determination of non-disability. The Commissioner responds that the ALJ properly assessed Dr. Chua's treatment reports, and gave adequate reasons for finding Plaintiff not fully credible. Doc. 15, Deft.'s Opp. Br., 6-12.

**DISCUSSION**

**1. The ALJ Properly Found Dr. Chua's February 12, 2010 Diagnoses of Major Depressive Disorder, Post-Traumatic Stress Disorder, and Panic Disorder with Agoraphobia to be Non-Severe**

*(a) Overview of Medical Evidence Regarding Plaintiff's Mental Impairments*

At the ALJ hearing, Plaintiff testified that the primary factor preventing her from working was her "mental issues," which have been diagnosed as "[p]ost-traumatic stress disorder, severe depression, anxiety, panic attacks." AR 26.

At the time she filed for SSI benefits in July 2008, Plaintiff, who was 43 years old, did not have a long history of mental health impairments or treatment. AR 192. Rather, the record reveals that Plaintiff first complained of depression and anxiety in September 2007, after her husband of 29 years was diagnosed with terminal lung cancer (Plaintiff's husband died in May 2008).[4] AR 218-220. Although Plaintiff was seen by a psychiatrist (Dr. Chua) on only two occasions (October 2, 2009, and February 12, 2010), she also sought treatment for depression and

---

[4] When Plaintiff saw Dr. Zeeshan Ahmed on April 23, 2008, she explained that her husband was dying of cancer; that she was "never really depressed/anxious" before her husband was diagnosed; and that she had "never seen anyone about psych issues" but now planned to see a hospice counselor. AR 192.

anxiety from her primary-care physicians. AR 460, 496.

Plaintiff saw at least three licensed clinical social workers ("LCSWs")—David Sandoval, Darlene Thompson, and Chris Bitonti— for mental health counseling; however Darlene Thompson and Chris Bitonti each saw Plaintiff only once. AR 449, 450. No treating psychiatrist, physician, or LCSW assessed any permanent functional limitations for Plaintiff on account of her mental impairments.[5]

Non-examining state-agency psychologist Harvey Bilik, Psy.D., completed a Psychiatric Review Technique form on September 19, 2008. AR 279. Dr. Bilik found that Plaintiff had severe impairments that were not expected to last for twelve months. AR 279. Specifically, Plaintiff suffered from depression-not otherwise specified and anxiety-not otherwise specified. AR 282; 283. Dr. Bilik concluded that Plaintiff had mild limitations in her activities of daily living, in social functioning, and in maintaining concentration, persistence, or pace, but no episodes of decompensation. AR 287. Dr. Bilik noted Plaintiff had become anxious and depressed after her husband was diagnosed with cancer. AR 289. Dr. Bilik noted that prior to her husband's death, Plaintiff's psychiatric symptoms appeared relatively well-controlled with medication, but that she had become grief stricken after he died in May 2008. AR 289. Dr. Bilik

---

[5] Although, no doctor or other medical source assessed *specific* functional limitations for Plaintiff, LCSW David Sandoval's treatment notes for an April 14, 2009 counseling session note as follows:

> Pt has found grief support to be helpful. She is also reading which gives her pleasure. There are still many issues including medical with patient. She states that she is worried about her shoulder surgery also.

> Pt. has not yet been approved for SSI. Given her current mental health issues (consistent crying/Depression/Grief) it would be hard for pt to work. However, goal would be to eventually return to function. Currently pt thinks about loss all day long. Have started to work on this.

AR 473.

4

noted that with medications and time, it did not "appear unreasonable to expect that functional limitations will be no more than mild by 07-01-09." AR 289.

On September 22, 2008, Charles Fracchia, M.D., a non-examining state-agency physician affirmed Dr. Bilik's finding that there was no severe impairment for a twelve month period. AR 292. On December 8, 2008, non-examining state-agency physician James Glaser, M.D., completed a case analysis. AR 301. Dr. Glaser also affirmed Dr. Bilik's opinion that Plaintiff's mental impairments would be non-severe by July 2009. AR 302.

In sum, the record is devoid of any medical evidence indicating that Plaintiff's mental impairments permanently limited her ability to work in any way.

### *(b)   Analysis*

Plaintiff's treating psychiatrist, Dr. Chua, gave conflicting diagnoses for Plaintiff's mental impairment based on two separate consultations four months apart, on October 2, 2009 and February 12, 2010, respectively. AR 460; 496. On October 2, 2009, Dr. Chua diagnosed Plaintiff with dysthymic disorder and bereavement.[6] AR 460. On February 12, 2010, Dr. Chua diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and panic disorder with agoraphobia. AR 496. Notably, Dr. Chua did not assess or identify any functional limitations on account of Plaintiff's mental impairment at any point.[7]

The ALJ found Plaintiff's mental impairment to be severe, and in resolving the conflict

---

[6] Prior to seeing Dr. Chua, Plaintiff's last appointment specifically for her mental impairment was on September 14, 2009 with LCSW David Sandoval, whom Plaintiff saw on repeated occasions. AR 463. During this visit, Mr. Sandoval listed Plaintiff's diagnoses as depression and bereavement, and noted that:
> [Patient] is caught between her depression and feelings of grief along with guilt for her other feelings; tried to work with patient to normalize these feelings as it is common in these situations to feel this way. Patient stated that she really has no one else to talk with about it. She is reluctant to go to grief group yet and has still been thinking of church support. Plan will be to continue to work with this patient in order to help her through this depression.

AR 463.

[7] For this reason, Dr. Chua's treatment notes do not strictly speaking constitute "medical opinions," but are, rather, treatment notes reflecting his diagnoses. *See, e.g.*, 20 C.F.R. §§ 416.927(a)(2); 416.913(b) and (c); *also see* Note 11 below.

5

between Dr. Chua's conflicting diagnoses, the ALJ adopted Dr. Chua's diagnosis of dysthymic disorder. AR 13. The ALJ found Plaintiff's diagnoses of major depressive disorder, post-traumatic stress disorder, and panic disorder with agoraphobia to be non-severe. AR 13. Plaintiff argues that the ALJ improperly gave greater weight to Dr. Chua's first diagnosis, dated October 2, 2009, while rejecting Dr. Chua's second diagnosis, dated February 12, 2010. AR 460; 496.

Dr. Chua's October 2, 2009 consultation report shows that he took a history from Plaintiff, recorded his independent assessment of Plaintiff's characteristics; and diagnosed her mental impairment. AR 460. His report states as follows:

> **Pertinent History/Findings:**
> 44 yr-old Caucasian, widowed, female, who presents [with] depression and grief issues. Pt. lost her husband to lung cancer [approximately] 1 yr. ago. She met him when she was 15. They had 2 kids. Husband was an alcoholic and was abusive to her. He always blamed [her] for the drinking. Pt.'s mother was mentally abusive to her. Sexually molested as a child [approximately] age 9. Pt. had a lot of drama and physical violence at home.
>
> **Assessment/Diagnosis:**
> She is childlike – immature – histrionic - co-dependent[,] "I miss him so much." Still quite depressed. A lot of guilt re. husband's death.
>     Dx-    Axis I – Dysthymic disorder; Bereavement
>            Axis II – Dependent & Histrionic personality disorder

AR 460. Dr. Chua continued Plaintiff on Celexa, with an increased dosage; continued Plaintiff on Klonopin and Trazodone "for now;" and recommended that Plaintiff continue with counseling.

After her October 2, 2009 consultation with Dr. Chua, Plaintiff did not seek further mental health treatment until January 29, 2010, when Plaintiff saw LCSW Chris Bitonti for an initial 30-minute visit. AR 450. In a brief clinician note, Mr. Bitonti listed her diagnoses as depressive disorder not otherwise specified and bereavement; he also noted, "R/O [i.e., rule out] PTSD." *Id.* Plaintiff then went to see LCSW Darlene Thompson on February 1, 2010, because she "wanted to be seen by a female clinician." AR 449. Ms. Thompson listed various "Axis 1" diagnoses for Plaintiff: "Major Depressive Disorder, recurrent, severe, without psychotic features; PTSD

6

chronic; Panic Disorder with Agoraphobia; Bereavement." AR 449 (diagnoses numbers omitted). Unlike Dr. Chua's October 2, 2009 diagnosis, Ms. Thompson did not note any Axis II diagnoses. Ms. Thompson also scheduled a second appointment for Plaintiff with Dr. Chua. AR 449.

Plaintiff then saw Dr. Chua on February 12, 2010. AR 496. This time Dr. Chua did not take the detailed history he did at Plaintiff's October 2, 2009 appointment; he also made only minimal independent findings; and he appears to have simply adopted the diagnoses noted by LCSW Darlene Thompson, which conflicted with the diagnoses he made at Plaintiff's October 2, 2009 appointment four months earlier. Dr. Chua's report regarding Plaintiff's February 12, 2010 consultation states as follows:

> **Pertinent History/Findings:**
> 44 yr old Caucasian female whom I have seen in the past – 10-2-09. She suffers from severe depression w/c was aggravated by the death of her husband from lung cancer > 1 yr ago (May '08). Husband was an alcoholic who was abusive to her. Pt. suffered mental, physical and sexual abuse as a child. Pt. still complains of poor sleep, nightmares, panic attacks, anxiety, crying spells.
>
> **Assessment/Diagnosis:**
> [F]orgetfulness, pain in R shoulder (on Vicodin). Pt. on Celexa … Klonopin … Trazadone.
>    Dx-   Axis I – Major depression, recurrent, severe; PTSD; Panic disorder with Agoraphobia; Bereavement.

AR 496.

The ALJ found Plaintiff's mental health impairment to be severe at step two of his disability analysis. Based on Dr. Chua's October 2, 2009 report, the ALJ characterized Plaintiff's mental impairment as dysthymic disorder. AR 12-13. The ALJ rejected Dr. Chua's February 12, 2010 diagnoses of major depressive disorder, post-traumatic stress disorder, and panic disorder with agoraphobia, finding these to be nonsevere. AR 13. The ALJ explained his step two analysis with regard to Plaintiff's mental impairment in detail. First, he noted that Plaintiff was treated for anxiety and depression by her primary-care doctors and by a mental health counselor at Stanislaus Health Services Agency Behavioral Health (LCSW David Sandoval). AR 13. Next,

the ALJ addressed Dr. Chua's conflicting reports:

> The claimant underwent a psychiatric consultation with psychiatrist Dr. Chua on October 2, 2009 (Exhibit 13F at 16). Dr. Chua noted the claimant to be childlike, immature, histrionic, and codependent. Dr. Chua diagnosed dysthymic disorder, bereavement, dependent and histrionic personality disorders (Exhibit 13F at 16).
>
> The claimant did not see her therapist [Darlene Thompson] again until February 1, 2010 (Exhibit 13F at 5). The claimant reported past abuse to her therapist and [s]he diagnosed major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia (Exhibit 13F at 5). Shortly thereafter, Dr. Chua changed his diagnoses to major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia (Exhibit 14F). Dr. Chua considered switching the claimant from Celexa to Effexor, and continued her Klonopin and Trazadone (Exhibit 14F).
>
> It appears that the more recent diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia appear to be uncritically based on the claimant's reported symptoms and history, and not on the practitioner's independent observations or analysis of the claimant's condition. Dr. Chua's decidedly different diagnoses of the claimant just four months apart highlight this (*compare* Exhibit 13F at 16 *with* Exhibit 14F). I give greater weight to the earlier diagnoses given their more objective nature and find the claimant's conditions of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia non-severe …

AR 12-13.

Plaintiff argues that the ALJ erred by giving greater weight to Dr. Chua's October 2, 2009 diagnosis and rejecting Dr. Chua's discrepant February 12, 2010 diagnoses. However, "[o]rdinarily, an expert's report ... is not binding on the ALJ so long as he provides clear and convincing reasons for rejecting the opinion." *Allen v. Heckler*, 749 F.2d 577, 579 (9th Cir. 1984) (internal quotation marks and citations omitted). Moreover, where medical evidence is conflicting, "it is the ALJ's role to determine credibility and to resolve the conflict," and "[i]f the evidence admits of more than one rational interpretation, [courts] must uphold the decision of the ALJ." *Id.* (citations omitted).

The ALJ provided proper, clear and convincing reasons for rejecting Dr. Chua's February 12, 2010 diagnoses in favor of his October 2, 2009 diagnosis. The ALJ found that Dr. Chua's

October 2, 2009 diagnosis of dysthymic disorder was "more objective" because it was based on his own, independent observations and analysis of the Plaintiff's condition.  The ALJ explained that, in contrast, Dr. Chua's February 12, 2010 diagnoses appeared to be "uncritically based" on the Plaintiff's symptoms and history as reported to LCSW Darlene Thompson and to Dr. Chua. [8]  AR 13.  The ALJ further noted that Dr. Chua seemingly changed his diagnoses at Plaintiff's second appointment in order to match Ms. Thompson's findings and conclusions.  AR 13.  The ALJ reasoned that Dr. Chua's "decidedly different diagnoses of the claimant just four months apart" indicated that his later diagnoses were derivative rather than objective.  AR 13.  In sum, the ALJ found that Dr. Chua's October 2, 2009 assessment was more thorough and accurate than his February 12, 2010 assessment, which did not encompass Dr. Chua's independent observations of Plaintiff.  It is the ALJ's role to resolve conflict in the medical evidence, and here the ALJ's interpretation of the evidence is rational.  As such, the Court will not second guess the ALJ's decision to give greater weight to Dr. Chua's October 2, 2009 diagnosis of dysthymic disorder.  *See Tomasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) ("the ALJ is the final arbiter with respect to resolving ambiguities in the medical evidence").

   Plaintiff argues that the ALJ should have found major depressive disorder, post-traumatic stress disorder and panic disorder with agoraphobia as severe impairments on the basis of a mere diagnosis.  While Dr. Chua noted these impairments as diagnoses on a consultation report just a few days before Plaintiff's ALJ hearing, he did not assess any functional limitations associated with the diagnoses.  *See Trac v. Colvin*, 2013 WL 1498908 (C.D. Cal. April 9, 2013) ("a mere diagnosis of an impairment is not enough to establish disability"); *also see Young v. Sullivan*, 911

---

[8] As discussed below, here the ALJ properly discounted Plaintiff's subjective symptom testimony, and, therefore, did not err in disregarding medical opinions premised to a large extent upon the Plaintiff's own accounts of her symptoms and limitations.  *See e.g., Tonapetyan v. Halter*, 242 F.3d 1144, 1149 (9th Cir. 2001); *Morgan v. Commissioner of Social Security Administration*, 169 F.3d 595, 602 (9th Cir. 1999); *Andrews v. Shalala*, 53 F.3d 1035, 1043 (9th Cir. 1995).

F.2d 180, 183-184 (9th Cir. 1990). An impairment with any appreciable effect on a person's ability to work would properly be construed as a severe impairment, but here there is no evidence that the Plaintiff's ability to work was impacted by symptoms of major depressive disorder, posttraumatic stress disorder, and/or panic disorder with agoraphobia. *See Webb v. Barnhart*, 433 F.3d 683, 686 (9th Cir. 2005) (an impairment is not severe only if represents a slight abnormality that has no more than a minimal effect on one's ability to work). Indeed, no medical or other source assessed any *specific* functional limitations due to Plaintiff's mental impairments,[9] and the ALJ properly discounted the Plaintiff's testimony about the disabling effect of her mental symptoms (see below).

The severity regulation requires a claimant to show that she has an impairment or combination of impairments which "significantly limit[s]" the "abilities and aptitudes necessary to do most jobs." 20 CFR §§ 404.1521, 416.921; *also see* SSR 85-28; *Bowen v. Yuckert*, 482 U.S. 137, 146 (1987) (if a claimant's impairments are "not severe enough to limit significantly the claimant's ability to perform most jobs, by definition the impairment does not prevent the claimant from engaging in any substantial gainful activity"). Plaintiff bears the burden to establish by a preponderance of the evidence the existence of a severe impairment that prevented performance of substantial gainful activity and that this impairment lasted for at least twelve continuous months. 20 C.F.R. §§ 404.1505(a), 404.1512, 416.905, 416.912; *Bowen*, 482 U.S. at 146, *Casey v. Shalala*, 999 F.2d 542, 542 (9th Cir. 1993); 42 U.S.C. § 423(d)(5)(A) (a claimant will not be considered to be under a disability unless he or she furnishes medical and other evidence of the existence thereof); 20 C.F.R. § 416.912(c) ("[a claimant] must provide evidence

---

[9] Plaintiff's counselor, LCSW David Sandoval, noted on April 14, 2009, that "[g]iven her current mental health issues (consistent crying/depression/grief) it would be hard for pt to work. However goal would be to eventually return to function." AR 473. Mr. Sandoval's general observation does not yield specific, permanent functional limitations. Plaintiff's son also noted some limitations, but his statement similarly does not address Plaintiff's ability to work with any specificity. AR 141-148.

... showing how [the alleged] impairment(s) affects ... [his or her] functioning"). Here the record does not reveal requisite functional limitations on account of Plaintiff's mental impairment, hence the ALJ properly determined that the diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder did not represent severe impairments.

The ALJ's determination is, moreover, supported by substantial evidence. First, as discussed above, the record does not reflect any functional limitations associated with Plaintiff's diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia. Next, Dr. Chua was the only "acceptable medical source" who diagnosed Plaintiff with major depressive disorder, post-traumatic stress disorder, and panic disorder with agoraphobia, and these diagnoses were inconsistent with his own diagnosis from only four months earlier.[10] AR 13. In contrast to Dr. Chua's diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia, Plaintiff's primary-care physicians only noted that she presented with generalized symptoms of anxiety, depression, grief and bereavement.[11] Furthermore, regarding Dr. Chua's conflicting diagnoses, the ALJ reasonably

---

[10] The existence of a medically determinable impairment may be established based only on evidence from "acceptable medical sources" (e.g., licensed physicians and psychologists). 20 C.F.R. §§ 404.1513(a), 416.913(a). Moreover, only "acceptable medical sources" can provide "medical opinions." 20 C.F.R. §§ 404.1527(a)(2), 416.927(a)(2). Finally, only an "acceptable medical source" can be considered a treating source, as defined in 20 C.F.R. §§ 404.1502, 416.902, whose medical opinion may be entitled to controlling weight. 20 C.F.R. §§ 404.1527(d), 416.927(d).

In addition to opinions from "acceptable medical sources," however, the Commissioner "may also use evidence from other sources to show the *severity* of [of a claimant's] impairment(s) and how it affects [her] *ability to work*." 20 C.F.R. §§ 404.1513(d), 416.913(d) (emphases added). These "other sources" include "medical sources" such as nurse-practitioners, physician's assistants, licensed clinical social workers, naturopaths, chiropractors, audiologists, and therapists, as well as "non-medical sources" such as relatives, educators, and social welfare agency personnel. 20 C.F.R. §§ 404.1513(d), 416.913(d).

[11] For the first time in her reply brief, Plaintiff argues that the ALJ improperly rejected the opinions of Plaintiff's other treating physicians. Doc. 16 at 2. Although 20 C.F.R. § 416.927(b) requires an ALJ to consider medical opinions, the records Plaintiff cites to were not strictly medical opinions. 20 C.F.R. 416.927(a)(2) defines "medical opinions" as "statements from physicians and psychologists or other acceptable medical sources that reflect judgments about the nature and severity of [a claimant's] impairment(s), including [her] symptoms, diagnosis and prognosis, what [she] can still do despite impairment(s), and [her] physical or mental restrictions." *See also* 20 C.F.R. §§ 416.913(b) and (c). In any event, the ALJ clearly considered and credited the treatment notes of Plaintiff's other treating physicians both at step two and at step four, thereby factoring them into his disability analysis. AR 12-13. None of these physicians assessed any functional limitations or rendered medical opinions that could be given

found that Dr. Chua's earlier diagnosis was based on his own observations and was thus more objective; in contrast, the diagnoses of major depressive disorder, posttraumatic stress disorder, and panic disorder with agoraphobia appeared to reflect Plaintiff's subjective complaints and the initial conclusions of LCSW Darlene Thompson after her first encounter with Plaintiff. Even Plaintiff herself never alleged that she suffered from agoraphobia, and the record is clear that she regularly attends church and medical appointments, visits family, and goes out of town. AR 39; 47; 145; 153; 185; 218; 449. Indeed there is no mention of agoraphobia in Plaintiff's medical records until Plaintiff's one-time consultation with LCSW Darlene Thompson shortly before her ALJ hearing. Similarly, there is no mention of posttraumatic stress disorder in Plaintiff's medical records until approximately two weeks before her ALJ hearing, when LCSW Chris Bitonti suggested ruling out PTSD as a basis for Plaintiff's symptoms and LCSW Darlene Thompson made an initial diagnosis of PTSD.[12]

Finally, not only did the ALJ find that Plaintiff had a severe medically-determinable mental impairment, specifically dysthymic disorder, he also considered all of Plaintiff's mental symptoms in determining Plaintiff's residual functional capacity at step four of the disability analysis. AR 15. Specifically, he evaluated "the intensity, persistence, and limiting effects of the claimant's symptoms to determine the extent to which they limit[ed] the claimant's functioning." AR 15. In his step four analysis, the ALJ noted that "[n]o opinion in the record suggests that

---

controlling weight regarding Plaintiff's ability to perform gainful work activities. *Cf. Montgomery v. Chater*, 69 F.3d 273, 275 (8th Cir. 1995) (an ALJ's failure to cite specific evidence does not indicate that such evidence was not considered); *see also Vincent on Behalf of Vincent v. Heckler*, 739 F.2d 1393, 1395 (9th Cir. 1984) (the Commissioner "need not discuss *all* evidence;" rather she must explain why "significant probative evidence has been rejected"); *Howard ex rel. Wolff v. Barnhart*, 341 F.3d 1006, 1012 (9th Cir. 2003) (the Commissioner "is not required to discuss evidence that is neither significant nor probative"). LCSW David Sandoval noted on April 14, 2009 that "[g]iven her current mental health issues (constant crying/depression/grief) it would be hard for pt to work," but concluded that the "goal would be to return to function." AR 309. Although Mr. Sandoval does not identify any specific functional limitations, the ALJ noted and credited Mr. Sandoval's conclusions. AR 16.

[12] In a progress note dated August 24, 2009, LCSW David Sandoval noted a "PTSD" diagnosis for Plaintiff. AR 464. However, in the progress note for Plaintiff's next visit, on September 14, 2009, he noted her diagnosis as "depression, bereavement;" and in the progress note for Plaintiff's prior visit, on April 14, 2009, he noted her diagnosis as complicated grief, depression, anxiety, with symptoms of bi-polar disorder. AR 463; 473.

claimant is permanently disabled from any type of work." AR 16.  He also observed that "[w]hile the claimant's son notes that the claimant has some limitations, he does reveal that the claimant engages in a variety of activities including shopping, church, cleaning the house and visiting her daughter," which "does not suggest that the claimant is unable to perform any kind of work activity." AR 16.  Therefore, even assuming *arguendo*, that the ALJ erred in his characterization of Plaintiff's mental impairment at step two, any error was harmless.  *See, e.g., Burch v. Barnhart*, 400 F.3d 676, 682 (9th Cir. 2005); *Lewis v. Astrue*, 498 F.3d 909, 911 (9th Cir. 2007); *Zettelmier v. Astrue*, 387 Fed. Appx. 729, 731 (9th Cir. 2010) ("even assuming that the ALJ erred by failing to conclude that Zettelmier's depression or back pain were severe at Step Two, such error was harmless because the ALJ addressed these conditions in connection with the assessment of Zettelmier's residual functional capacity at Step Four"); *Bickell v. Astrue*, 343 Fed.Appx. 275 (9th Cir. 2009) (where ALJ found non-severe impairments at step two but nonetheless considered them at steps four and five, any error was harmless).

**2.  The ALJ Properly Discounted Plaintiff's Subjective Symptom Testimony**

The ALJ found that while Plaintiff's medically determinable impairments could reasonably be expected to cause the symptoms she described, her testimony concerning the intensity, persistence and limiting effects of these symptoms was not credible to the extent it was inconsistent with his determination that Plaintiff retained the residual functional capacity to perform medium work. AR 15.  Plaintiff argues that the ALJ improperly discredited Plaintiff's subjective symptom testimony by failing to provide legally sufficient reasons for rejecting this evidence. Doc. 14, Pltff.'s Op. Br., 19-22.  The Commissioner responds that "[t]he ALJ properly explained why Plaintiff was not fully credible and Plaintiff's disagreement with the ALJ is not evidence of error." Doc. 15, Deft.'s Op. Br., 9.  For the reasons discussed below, the Court finds that the ALJ's credibility assessment was free of legal error and supported by substantial

evidence.

### *(a) Summary of Plaintiff's Testimony*

Plaintiff testified that the primary reason she could not re-enter the work force was her post-traumatic stress disorder, depression, anxiety, and panic attacks. AR 26. Plaintiff testified that she also had pain in her back and in her right shoulder. AR 26. In 2009, Plaintiff underwent surgery on her right shoulder, which did not help. AR 27. After the surgery, Plaintiff did physical therapy, which did not help. AR 27. Plaintiff's shoulder pain and her limited range of motion were worse after surgery. AR 28.

In a typical day, Plaintiff got up and took her medications. AR 40. Plaintiff then called her father, whom she talked to everyday. AR 40. Plaintiff spent the remainder of the day in front of the television. AR 41. Plaintiff slept three to four hours per night. AR 42.

Plaintiff's past work included babysitting her grandson and working as a crew member and manager for a fast food restaurant. AR 29. While working at the fast food restaurant, Plaintiff lifted about fifty pounds routinely. AR 29-30. Plaintiff stood and walked all day and worked eight hours per day and forty hours per week. AR 30. Plaintiff stated that she could not return to her job in the fast food industry because her shoulder would not allow her do the lifting required. AR 30-31. Plaintiff also had trouble with reaching and grabbing and back pain. AR 31. Finally, the job was too stressful. AR 31. Plaintiff testified that she "had a lot of problems when she was working;" her "husband was an alcoholic," and she "had to leave the job all the time to go rescue [her] children." AR 33.

Plaintiff was undergoing regular counseling, including grief counseling. AR 35. Plaintiff reported that she was still having panic attacks twice a day and her panic attacks had resulted in her going to the emergency room. AR 36. Plaintiff's panic attacks occurred for a multitude of reasons, but could be brought on by something as simple as seeing a picture or forgetting an

appointment. AR 37. When Plaintiff had a panic attack, she went to her room and turned the lights off and lied down. AR 37. After the panic attack had passed, Plaintiff would have chest pains for forty-five minutes to an hour. AR 38. Plaintiff would feel exhausted and need to lie down. AR 38.

Plaintiff's daughter had moved in with her to assist her with getting to appointments on time and driving her around. AR 38-39. Plaintiff did not do most of the household chores. AR 39. Plaintiff's daughter assisted her with getting dressed because she had trouble getting her bra and some blouses on. AR 40.

Plaintiff testified that she could probably lift twenty pounds, sit for fifteen to twenty minutes, and stand for twenty to thirty minutes. AR 45-46. Plaintiff had a harder time walking because she had a tendency to swing her shoulders, which caused her pain. AR 46. Plaintiff testified that she had not used drugs or alcohol since 2004. AR 46-47.

### *(b) Applicable Law*

"Generally a claimant's credibility becomes important at the stage where the ALJ is assessing residual functional capacity, because the claimant's subjective statements may tell of greater limitations than can medical evidence alone." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (2001). In evaluating the credibility of symptom testimony, the ALJ may use ordinary techniques of credibility evaluation; the ALJ must also consider the factors set out in SSR 88-13, including the claimant's work record and physicians' observations regarding the nature, intensity and effect of the alleged symptoms. *See* SSR 88-13; *also see Smolen v. Chater*, 80 F.3d 1273, 1284 (1996); *Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002). Finally, "[i]f the ALJ finds that the claimant's testimony as to the severity of her pain and impairments is unreliable, the ALJ must make a credibility determination with findings sufficiently specific to permit the court to conclude that the ALJ did not arbitrarily discredit claimant's testimony." *Barnhart*, 278 F.3d at 958. In

other words, the ALJ "must give specific, convincing reasons for rejecting a claimant's subjective statements." *Tonapetyan*, 242 F.3d at 1149. If the ALJ's credibility finding is supported by substantial evidence in the record, courts "may not engage in second-guessing." *Barnhart*, 278 F.3d at 959.

### *(c) Analysis*

The ALJ cited several specific reasons for discounting Plaintiff's subjective symptom testimony. First, the ALJ noted that Plaintiff had a spotty work history and that Plaintiff had told her therapist that she had not worked since sustaining a felony conviction.[13] The ALJ reasoned that these facts raised a "question as to whether the claimant's continuing unemployment is actually due to medical impairments," and accordingly discounted Plaintiff's subjective symptom testimony. AR 15. Plaintiff's work history is limited at best, as the only employment Plaintiff pursued was a short span in the fast food industry and briefly babysitting her grandson. AR 29-30. The record also contains references to Plaintiff's felony conviction, and her discussion with LCSW Darlene Thompson indicates that it was a factor in her limited work history. AR 46; 314; 449. The ALJ's reasons for discounting Plaintiff's subjective symptom testimony on the basis of her poor work record and her statement that she stopped working after her felony conviction are specific and convincing, and are based on substantial evidence in the record. *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) ("spotty" work history constitutes a clear and convincing reason for discounting a claimant's testimony); *Bray v. Commissioner,* 554 F.3d 1219, 1227 (9th Cir. 2009) (an ALJ may consider a claimant's work record as a factor in reaching a credibility determination); *see also* 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3) (an ALJ may consider a claimant's prior work record in assessing the claimant's credibility).

---

[13] The Stanislaus County Superior Court online case index reveals that Plaintiff was charged with various felonies and misdemeanors in 2003, and was convicted of one felony (force or assault with a deadly weapon not firearm: great bodily injury likely) in 2004.

Next the ALJ discounted Plaintiff's testimony regarding the allegedly disabling effects of her shoulder pain. AR 16. The ALJ explained that although "the record reflects that the claimant continued to experience some pain after her surgery, there is no evidence that the claimant is completely precluded from working because of this condition." AR 16. The ALJ reasoned that "[g]iven the claimants' allegations of quite disabling symptoms, one might expect to see some indication in the treatment records of restrictions placed on the claimant by the treating doctor." AR 16. The ALJ found that it was notable that "a review of the record in this case reveals no restrictions recommended by a treating doctor after her surgery." AR 16. The ALJ's reasons for discounting Plaintiff's subjective symptom testimony relating to her shoulder pain are specific and convincing, and supported by substantial evidence in the record.[14]

Finally, with respect to Plaintiff's mental impairments, the ALJ noted that "the record reflects somewhat intermittent treatment for the claimant's depression and anxiety." AR 16. He further observed that "[t]he claimant was also reluctant to follow her doctors' suggestions that she seek bereavement counseling." AR 16. The ALJ concluded that "[t]hese facts suggest both that the claimant's symptoms were not as troublesome as now alleged and that the claimant's medication regimen was effective." AR 16. While the Plaintiff fairly regularly sought treatment for her mental health impairment after her husband was diagnosed with lung cancer and passed away, Plaintiff did not seek any mental health counseling or other specialized mental health

---

[14] Plaintiff argues, as part of her challenge to the ALJ's credibility determination, that the ALJ should have obtained additional records regarding the physical therapy Plaintiff underwent after her shoulder surgery. Plaintiff bears the burden of providing evidence to prove that her impairments limit her functioning to the point of disability. 42 U.S.C. § 423(d)(5)(A), 20 C.F.R. §§ 404.1512(c); 416.912(c). Nonetheless, "[i]n Social Security cases, the ALJ has a special duty to develop the record fully and fairly and to ensure that the claimant's interests are considered." *Brown v. Heckler,* 713 F.2d 441, 443 (9th Cir. 2003). The ALJ's duty to develop the record further is triggered, however, only by ambiguous evidence, the ALJ's own finding that the record is inadequate, or the ALJ's reliance on an expert's conclusion that the evidence is ambiguous. *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001); *also see Smolen v. Chater*, 80 F.3d 1273, 1288 (9th Cir. 1996) (the ALJ has a duty to develop the record or "conduct an appropriate inquiry" when the evidence is ambiguous or the ALJ finds the record is not sufficient for him to evaluate the evidence and make a determination as to Plaintiff's alleged disability). Here, the record was sufficient for purposes of evaluating the evidence and making a disability determination, and there were no unresolved ambiguities regarding Plaintiff's functional limitations.

treatment in the four months leading up to her ALJ hearing.  Approximately two weeks before her ALJ hearing, Plaintiff saw a new counselor, but there is no evidence that she received regular treatment from this counselor.  AR 449; 450.  Similarly, Plaintiff did not see her previous mental health counselor, David Sandoval, for a four-month period between April and August 2009.[15]  The ALJ's reasons for discounting Plaintiff's subjective symptom testimony regarding her mental impairment are therefore specific and convincing, and based on substantial evidence in the record.

In sum, the ALJ's stated reasons for discounting Plaintiff's testimony are specific, clear and convincing, and his credibility finding is free of legal error and supported by substantial evidence in the record.  *See Tonapetyan,* 242 F.3d at 1149; *Barnhart*, 278 F.3d at 959.

## CONCLUSION

The Court finds that the ALJ's decision is free of legal error and is supported by substantial evidence in the record as a whole.  Accordingly, this Court DENIES Plaintiff's appeal from the administrative decision of the Acting Commissioner of Social Security.  The Clerk of this Court is DIRECTED to enter judgment in favor of Defendant Carolyn W. Colvin, the Acting Commissioner of Social Security, and against Plaintiff Teresa Sevier.

IT IS SO ORDERED.

   Dated:   **March 25, 2014**                              **/s/ Gary S. Austin**
                                                                                          UNITED STATES MAGISTRATE JUDGE

---

[15] The ALJ also noted that in a January 20, 2009 progress note, Mr. Sandoval noted that Plaintiff had returned for counseling after a hiatus of "several months."  AR 314.